# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

FEDERAL TRADE COMMISSION,

    **Plaintiff,**

v.

THE PRIMARY GROUP INC., a
corporation, f/k/a A Primary Systems
Group Inc., also d/b/a Primary
Solutions and PSA Investigations,

GAIL DANIELS, individually and as
an officer of THE PRIMARY
GROUP INC., and

JUNE FLEMING, individually and as
an officer of THE PRIMARY
GROUP INC.,

    **Defendants.**

**CIVIL ACTION FILE**

**NO. 1:15-CV-1645-MHC**

## ORDER GRANTING PRELIMINARY INJUNCTION

I.    <u>Procedural History</u>

On May 11, 2015, Plaintiff Federal Trade Commission ("FTC") filed a

Complaint under Section 13(b) of the Federal Trade Commission Act ("the FTC

Act"), 15 U.S.C. § 53(b), and Section 814 of the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692l, to obtain temporary, preliminary, and permanent

injunctive relief, rescission or reformation of contracts, restitution, refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for alleged deceptive acts or practices committed by Defendants in violation of those Acts. [Doc. 1.] The FTC, proceeding *ex parte* on a sealed record, sought a temporary restraining order ("TRO") pursuant to Rule 65(b) of the Federal Rules of Civil Procedure. [Doc. 5.]

On May 11, 2015, this Court issued a TRO upon request of the FTC which: temporarily froze Defendants' assets; granted immediate access to Defendants' premises; enjoined Defendants from transferring, concealing, or disposing of assets; required Defendants to make an accounting of their present financial condition; and granted Plaintiff leave to engage in limited expedited discovery to determine the existence and location of assets and documents pertinent to the allegations of the Complaint. [Doc. 8.] The TRO also ordered Defendants to appear at a hearing on June 4, 2015, at 10:00 A.M. to show cause why the Court should not issue a preliminary injunction against Defendants until a final ruling is issued on the Complaint. Id. at 27. The prior order sealing the FTC's filings and the TRO was dissolved on May 15, 2015. [Doc. 6.]

A stipulation modifying the terms of the TRO was filed on May 21, 2015, which lifted the asset freeze on two accounts belonging to Defendant June

Fleming. [Doc. 15.] A second stipulation modifying the terms of the TRO was filed on June 5, 2015, which lifted the asset freeze on seven separate accounts in order to provide Defendant Daniels with access to necessary funds. [Doc. 35.] Under the provisions of Rule 65(b), the TRO expired on May 26, 2015, but was reinstated on May 28, 2015, with an expiration date of June 8, 2015. See Order dated May 27, 2015 [Doc. 21].

II.   The Complaint

The Complaint alleges that Defendants, transacting business through Defendant The Primary Group, a Georgia corporation, are third-party debt collectors that collect consumer debt nationwide through the use of false, deceptive, and misleading tactics in violation of the FTC Act and the FDCPA. Compl. [Doc. 1] ¶¶ 6, 7. Defendant Daniels is the CFO and Defendant Fleming is the CEO of the Primary Group. Id. ¶¶ 8, 9.

The Complaint alleges that, since at least April 2012, Defendants' representatives, by telephone calls and text messages to mobile phones, contacted consumers in an effort to collect debts and falsely claimed that they were agents, inspectors, or process servers rather than debt collectors. Id. ¶¶ 13-15, 26-27, 34. Defendants allegedly threaten consumers with legal action or arrest by claiming there is either a pending or potential lawsuit which can only be resolved by an

immediate payment to Defendants when, in reality, no such legal action is pending. Id. ¶¶ 13, 16, 18, 26-27. Defendants also have allegedly communicated with consumers' family members, co-workers, and employers in an effort to apply pressure to consumers to pay Defendants to stave off legal action. Id. ¶¶ 13, 19-20, 33. The Complaint also alleges that Defendants have failed to provide required statutory disclosures in text messages and phone calls to identify themselves as debt collectors, and to provide notice that information provided by the consumer will be used for debt collection purposes, of the amount of the debt, of the name of the creditor to whom the debt is owed, or the procedure for disputing the alleged debt, all in violation of the FTC Act or the FDCPA. Id. ¶¶ 13, 21-23, 34-35.

The FTC contends that consumers have suffered considerable injury due to Defendants' violations of the FTC Act and the FDCPA and that Defendants have been unjustly enriched due to the false and deceptive practices they have perpetrated. Id. ¶ 36. The FTC seeks injunctive relief to prevent Defendants from continuing to profit from injuring consumers and harming the public interest. Id.

III.    The Preliminary Injunction Hearing

A full-day preliminary injunction hearing was held on June 4, 2015. The FTC was present and represented by counsel. Defendant Daniels was present and

acted *pro se*.[1] Defendant Daniels testified on her own behalf and also called as a

witness Cecil Presley, the Assistant Manager for the Corporate Defendant.

Michael B. Goldstein, a Federal Trade Investigator assigned to work on the FTC's

investigation of Defendants, testified in rebuttal. The Court admitted Plaintiff's

Exhibits PX1-PX20 over Plaintiff's objection and admitted Defendants' Exhibit 1

without objection.

IV.    Findings of Fact[2]

1.    Defendant Gail Daniels ("Ms. Daniels") started the business of The

Primary Group d/b/a Primary Solutions ("the Corporate Defendant")

in 2012 based on a friend's recommendation but she had no prior

experience with the debt collection business. She hired a manager

with prior debt collection experience who in turn employed Cecil

Presley ("Mr. Presley") and others as collection agents.

2.    Ms. Daniels is the Chief Financial Officer of the Corporate Defendant.

Defendant June Fleming, Ms. Daniel's mother, is the Chief Executive

---

[1] Defendant Daniels was advised both prior to and at the hearing that under Local
Rule 83.1E(2)(b)(I) of this Court, a corporation cannot be represented in court by a
corporate officer who is not an attorney licensed to practice law in Georgia and
that failure to comply with this rule could result in a default being entered against
the corporate party.
[2] Except as noted, the findings of fact are derived from testimony at the
preliminary injunction hearing.

Officer. (Decl. of Michael B. Goldstein [Pl.'s Exs. PX01-0004-0005].) Although Defendant Fleming has signatory authority over the Corporate Defendant's bank accounts (Pl.'s Exs. PX01-0072, 0077-0078, 0080), at this stage of the proceedings it appears that she has little to no involvement in the operation of the business. Ms. Daniels testified that she also has little to no involvement in the daily operation of the business; however, she also testified that she has been directly involved in both monitoring and terminating employees and in the financial aspects of the business. This Court finds that Ms. Daniels has been personally aware of violations of the FTC Act and FDCPA that have been made by employees of the Corporate Defendant in its dealings with consumers.

3.     On average, Ms. Daniels has drawn about $6,500.00 per month from the Corporate Defendant for personal expenses.

4.     According to Mr. Presley, the business originally had an office on Johnson Ferry Road where there were about four collections agents. Because of "bad collections practice," many of those employees were terminated.

5. The business then moved to an office on Elkins Road and Mr. Presley was promoted to Assistant Manager. He was in charge of the initial scripts and rebuttal scripts that were used when collection agents of Defendants made contact with consumers. According to Mr. Presley, there were about eight collection agents at the Elkins Road office.

6. Because business was expanding, a move was made to offices known as Cambridge Square, where there may have been as many as sixteen collection agents at one time. However, once again, there was a problem with agents undertaking improper collection practices, including using personal cell phones to contact consumers and possibly diverting funds into collection agents' personal accounts. A number of people were terminated for engaging in this conduct, including another Assistant Manager, who Ms. Daniels believes may have a personal vendetta against her.

7. It is unclear how many individuals the Corporate Defendant has employed since 2012. Ms. Daniels testified at one point that there have been a total of 140 employees but Mr. Presley testified as to a much lower number.

8. Between May 2014 and May 2015, the Corporate Defendant received approximately $584,000 in revenue from collections. It is unclear as to what portions of those revenues were allocated between actual creditors and the Corporate Defendant itself.

9. The Corporate Defendant has hundreds of thousands of consumers in its data bank. Although it is unclear as to how many have actually been contacted by the Corporate Defendant or have paid money to the Corporate Defendant to satisfy alleged ongoing debts, Mr. Presley testified that the Corporate Defendant had enough existing consumers in its data base that it did not need to obtain new consumers in order to run a profitable business operation.

10. Defendants have opened and closed a number of bank accounts during the past three years when the Corporate Defendant has conducted the business of debt collection. (Pl.'s Exs. PX01-0011-0019.) Ms. Daniels testified that she maintains a "general consumer funds" account where the Corporate Defendant's profit from its debt collection business is deposited. Funds are then moved to a payroll account to pay employees. It is from the general account that Ms. Daniels withdraws $6,500.00 per month for her personal expenses.

11. The Court has reviewed fourteen declarations of consumers who were contacted by representatives of the Corporate Defendant either by telephone or through text messages during the period from May 2013 through April 2015. (Pl.'s Exs. PX02-0001 through PX15-0002.) These contacts for the purpose of debt collection revealed the following false and deceptive practices:

   a. Misrepresentations that the representatives of the Corporate Defendant are agents, inspectors, or process servers.

   b. Misrepresentations concerning the consequences of failing to pay a debt, including the threat of litigation, both civil and criminal.

   c. Improper contacts with consumers' family members or third parties such as employers or co-workers in an effort to pressure the consumers to pay off their alleged debt.

   d. Failure to make required disclosures under the FDCPA, including failure to disclose that the caller or texter is attempting to collect a debt, that any information obtained will be used for that purpose, and failure to provide the debtor with the proper validation notice to verify the existence of the debt.

12. Ms. Daniels contends that nine of the fourteen consumers who made declarations are lying about the content of the contacts from the Corporate Defendant. No evidence has been presented, however, to negate the content of these declarations. She also contends that she has never been sued by a debtor.

13. In accordance with the TRO entered in this case, the FTC's Investigator, Michael B. Goldstein, entered the Corporate Defendant's place of business in Cambridge Square and recovered both paper documents and images of computers which contained scripts prepared for telephone calls and text messages to consumers to be used by representatives of the Corporate Defendant when making both initial contacts to consumers and responding to responsive calls from consumers. (Pl.'s Exs. 18-0022-18-0161.) These scripts contain the same or similar violations of the FDCPA that were related by the consumers who executed declarations in this case.

14. Mr. Presley admitted that some of these scripts previously had been used by employees of the Corporate Defendant, that he never used some of the scripts himself, and contends that he is not aware that those scripts are still being used, identifying a new script which has

some of the required FDCPA disclosures and eliminates much of the deceptive language. (Defs.' Ex. 1.). It is unclear when that new script started being used, as there is a similar script bearing an effective date of February 5, 2015, that still contains statements which are in violation of the FDCPA. (Pl.'s Ex. 18-0030-0044.)

15. Mr. Presley also identified the transcript of a telephone call to a consumer as one that he made, which contains some of the same violations of the FDCPA referenced above. (Pl.'s Ex. 18-0111-0134.)

16. Ms. Daniels complained that the FTC only presented the scripts that contained violations of the FDCPA but not other scripts that were in compliance. Aside from Defendant's Exhibit 1, all of the scripts reviewed by the Court that are currently in the record contain violations of the FDCPA.

17. To date, the FTC has identified bank accounts controlled by Defendants that have a combined balance of approximately $13,000.

18. It is still unclear to this Court: (1) how much profit Defendants have earned from the business of the Corporate Defendant, (2) how many consumers actually paid money to Defendants based upon false or misleading representations in violation of the FTC Act and the

FDCPA, and (3) what is the total amount of money currently available to Ms. Daniels and how much money is actually needed for her necessary living expenses.

## V. Discussion

### A. Legal Standard

Normally, a private party seeking a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure must demonstrate: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction is issued; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction might cause the non-moving party; and (4) if issued, the injunction would not be adverse to the public interest. BellSouth Telecomms., Inc. v. MCIMetro Access Transp. Servs., LLC, 425 F.3d 964, 968 (11th Cir. 2005). However, under 15 U.S.C. § 53(b), the Court may issue a preliminary injunction if the FTC proves both (1) a likelihood of ultimate success on the merits, and (2) that the balancing of equities favors such action. FTC v. IAB Mktg. Assocs., LP, 746 F.3d 1228, 1232 (11th Cir. 2014); FTC v. Univ. Health, Inc., 938 F.2d 1206, 1217 (11th Cir. 1991).

"Unlike private litigants, the FTC need not demonstrate irreparable injury in order to obtain injunctive relief," IAB Mktg. Assocs., 746 F.3d at 1232, and the

12

FTC need not prove a "substantial" likelihood of success, see Univ. Health, 938 F.2d at 1217-18. The reduced burden only requires the Court to consider the likelihood of ultimate success by the FTC and a balancing of equities between the parties. Id. When balancing the equities, the Court must keep in mind that injunctive relief "is appropriate if the defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future"; however, such relief may not be appropriate in instances where the defendant's actions are unlikely to recur. See FTC v. USA Fin., LLC, 415 F. App'x 970, 975 (11th Cir. 2011). "At the preliminary injunction stage, a district court may rely on . . . hearsay materials which would not be admissible evidence for a permanent injunction if the evidence is appropriate given the character and objectives of the injunction proceeding." Levi Strauss & Co. v. Sunrise Intern. Trading, Inc., 51 F.3d 982, 985 (11th Cir. 1995) (internal quotation marks and citation omitted).

B.    Likelihood of Success

Section 5 of the FTC Act prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). To establish Section 5 liability, the FTC must prove that "(1) there was a representation; (2) the representation was likely to mislead customers acting reasonably under the circumstances, and (3) the representation was material." FTC v. Tashman, 318 F.3d 1273, 1277 (11th Cir.

13

2003). "Because the primary purpose of § 5 is to protect the consumer public rather than to punish the wrongdoer, the intent to deceive the consumer is not an element of a § 5 violation. . . . Instead, the 'cardinal factor' in determining whether an act or practice is deceptive under § 5 is the likely effect the promoter's handiwork will have on the mind of the ordinary consumer." FTC v. Freecom Comme'ns, Inc., 401 F.3d 1192, 1202 (10th Cir. 2005) (citations omitted).

In enacting the FDCPA, Congress sought "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA applies to "debt collectors," defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Accordingly, the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. In determining whether a debt collector's communication is deceptive, the Eleventh Circuit has adopted the

"least-sophisticated consumer" standard "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1194 (11th Cir. 2010) (citations omitted).  A violation of the FDCPA is deemed an unfair or deceptive act or practice in violation of the FTC Act.  Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 577 (2010).

With these principles in mind, and after carefully reviewing the pleadings, declarations, evidence, and testimony of witnesses, the Court concludes that the FTC has established at least a likelihood of success on the merits against Defendants in this matter.  The evidence demonstrates that Defendants made material false and deceptive representations likely to mislead consumers about the nature of the debts allegedly owed to creditors and failed to provide consumers with the required disclosures under the FDCPA.  Although Ms. Daniels claims that many of the consumers were satisfied with the services Defendants provided, the Court concludes that the FTC has made the necessary showing to demonstrate a likelihood of success on the merits because many consumers were potentially misled by the representations of Defendants' agents and those false and misleading representations may have tainted many consumers' decisions to send money to Defendants.  See, e.g., FTC v. Inbound Call Experts, LLC, No. 14-81395-CIV,

2014 WL 8105107, at *4 (S.D. Fla. Dec. 23, 2014). The Court also concludes that

Defendants' actions are likely to recur without injunctive relief because scripts

containing false and deceptive representations in violation of the FDCPA were

effective and used within the past several months.

C.    Balancing the Equities

After carefully reviewing the pleadings, declarations, evidence, and

testimony of witnesses, the Court concludes that the FTC has meet its burden of

proving that the equities favor a preliminary injunction against Defendants. The

public interest in being free from fraudulent and deceptive misrepresentations by

debt collectors is strong and entitled to great weight. On the other hand,

Defendants have no right to persist in conduct that violates federal law. See FTC

v. World Wide Factors, Ltd., 882 F.2d 344, 347 (9th Cir. 1989) (affirming district

court finding that "there is no oppressive hardship to defendants in requiring them

to comply with the FTC Act, refrain from fraudulent representation or preserve

their assets from dissipation or concealment.").

However, the Court will not give Plaintiff an indefinite period under which

to freeze Defendants' assets in order to determine what ultimate relief is

appropriate in this case. The remedies authorized by this preliminary injunction

should provide Plaintiff with the means to determine such relief and this Court will

16

extend the time period under which the preliminary injunction is in effect only upon consent of the parties or for good cause.

VI.  Conclusion

Accordingly, for the above reasons, it is hereby **ORDERED** that the Temporary Restraining Order [Docs. 8, 21] shall extinguish immediately, and the following **PRELIMINARY INJUNCTION** shall issue forthwith:

<strong><u>PRELIMINARY INJUNCTION</u></strong>

I.  **<u>DEFINITIONS</u>**

A.  **"Assets"** means any legal or equitable interest in, right to, or claim to, any real or personal property, including, without limitation, chattels, goods, instruments, equipment, fixtures, general intangibles, leaseholds, mail or other deliveries, inventory, checks, notes, accounts, credits, contracts, receivables, shares of stock, and all cash, wherever located.

B.  **"Consumer"** means any person.

C.  **"Corporate Defendant"** means The Primary Group Inc., formerly known as A Primary Systems Group Inc., and also doing business as Primary Solutions and PSA Investigations, and its successors and assigns.

D. **"Debt"** means any obligation or alleged obligation to pay money arising out of a transaction, whether or not such obligation has been reduced to judgment.

E. **"Defendants"** means all of the Individual Defendants and the Corporate Defendant, individually, collectively, or in any combination.

F. **"Document"** and **"Electronically Stored Information"** are synonymous in meaning and equal in scope to the usage of the terms in Rule 34(a) of the Federal Rules of Civil Procedure and include but are not limited to:

    i. The original or a true copy of any written, typed, printed, electronically stored, transcribed, taped, recorded, filmed, punched, or graphic matter or other data compilations of any kind, including, but not limited to, letters, email or other correspondence, messages, memoranda, interoffice communications, notes, reports, summaries, manuals, magnetic tapes or discs, tabulations, books, records, checks, invoices, workpapers, journals, ledgers, statements, returns, reports, schedules, or files; and

ii. Any electronically stored information stored on any server, Blackberrys or any type of mobile device, flash drives, personal digital assistants ("PDAs"), desktop personal computer and workstations, laptops, notebooks, and other portable computers, or other electronic storage media, whether assigned to individuals or in pools of computers available for shared use, or personally owned but used for work-related purposes; backup disks and tapes, archive disks and tapes, and other forms of offline storage, whether stored onsite with the computer used to generate them, stored offsite in another company facility, or stored, hosted, or otherwise maintained offsite by a third-party; and computers and related offline storage used by Defendants or Defendants' participating associates, which may include persons who are not employees of the company or who do not work on company premises.

G. **"Electronic Data Host"** means any person or entity in the business of storing, hosting, or otherwise maintaining electronically stored information.

H. **"Financial Institution"** means any bank, savings and loan institution, credit union, or any financial depository of any kind, including, but not limited to, any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer.

I. **"Individual Defendants"** means Gail Daniels and June Fleming.

J. **"Person"** means a natural person, a organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

K. The terms **"and"** and **"or"** shall be construed conjunctively or disjunctively as necessary to make the applicable phrase or sentence inclusive rather than exclusive.

## II. PROHIBITED REPRESENTATIONS AND DEBT COLLECTION ACTIVITIES

**IT IS HEREBY ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the collection or the attempted collection of any debt, are hereby enjoined from:

A.   Misrepresenting, or assisting others who are misrepresenting, expressly or by implication, orally or in writing, any of the following:

   1.   That Defendants' debt collectors are agents, inspectors, or process servers;

   2.   That Defendants have filed, or intend to file, a lawsuit against the consumer for failure to pay a purported debt; or

   3.   That Defendants will have the consumer arrested or imprisoned;

B.   Communicating with any person other than the consumer, his attorney, his parent (if the consumer is a minor), the consumer's spouse, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector, or the guardian, executor, or administrator of the consumer, for purposes other than acquiring location information about a consumer, without having obtained directly the prior consent of the consumer or the express permission of a court of competent jurisdiction, and when not reasonably necessary to effectuate a postjudgment judicial remedy;

C.   Failing to disclose or disclose adequately in the initial communication with a consumer that any Defendant or any other person is a debt

collector attempting to collect a debt and that any information obtained will be used for that purpose;

D. Using any false representation or deceptive means to collect or attempt to collect a debt, or to obtain information concerning a consumer;

E. Failing to provide consumers, within five (5) days after the initial communication with a consumer, a written notice containing: (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty (30) days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by Defendants; (4) a statement that if the consumer notifies Defendants in writing within the thirty-day period that the debt, or any portion thereof, is disputed. Defendants will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by Defendants; and (5) a statement that, upon the consumer's written request within the thirty-day period, Defendants will provide the consumer with the name and

address of the original creditor, if different from the current creditor; and

F.      Engaging in any other conduct that violates the FDCPA, 15 U.S.C. §§ 1692-1692p.

## III.     ASSET FREEZE

**IT IS FURTHER ORDERED** that:

A.      Except as provided in the Stipulations previously entered by the parties in this case,[3] Defendants are hereby enjoined from directly or indirectly:

1.      Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any funds, real or personal property, accounts, contracts, consumer lists, or any other assets, or any interest therein, wherever located, including outside the United States, that are: (1) owned or controlled, directly or indirectly, by any Defendants, in whole or in part, or

---

[3] See Section III.B. of this Order.

held, in whole or in part for the benefit of any Defendants; (2) in the actual or constructive possession of any Defendants; or (3) owned, controlled by, or in the actual or constructive possession of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by, or under common control with any Defendants, and any assets held by, for, or under the name of any Defendants at any bank or savings and loan institution, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, or other financial institution or depository of any kind;

2.    Opening or causing to be opened any safe deposit boxes titled in the name of any Defendants, or subject to access by any Defendants;

3.    Incurring charges or cash advances on any credit card, debit card, or checking card issued in the name, singly or jointly, of any Defendants;

4.    Obtaining a personal or secured loan;

5.  Incurring liens or encumbrances on real property, personal property or other assets in the name, singly or jointly, of any Defendants; and

6.  Cashing any checks from consumers, clients, or customers of any Defendants.

B.  Except as provided in this subsection, the funds, property, and assets affected by this Section shall include: (a) all assets of each Defendant as of the time the TRO [Doc. 8], was entered on May 11, 2015 at 10:30 a.m., and (b) those assets obtained after May 11, 2015 at 10:30 a.m., that are derived, directly or indirectly, from any debt collection activities that predate the entry of this Order. The funds, property, and assets affected by this Section shall not include: (a) JP Morgan Chase Bank accounts xxxxxxxxxxx0966 and xxxxxxxxxxx7822 with respect to Defendant Fleming; (b) LGE Community Credit Union account xxx4080 with respect to Defendant Fleming; (c) Guaranty Bank accounts Primary Group xxxxxxxxxxxx0900 and Gail Daniels account xxxxxxxxxxxx1900; (d) Hamilton State Bank accounts The Primary Group xxxxxxxxxxxx1662, The Primary Group xxxxxxxxxxxx1647, The Primary Group xxxxxxxxxxxx1654, and

Farbarback xxxxxxxxxxxx1670; and (e) a total sum of $4,000 in AMP

Global Clearing account Farbarback xxxxxxxxxxxx1821.

C.   The Court directs both Plaintiff and Defendants to cooperate in an

effort to resolve any additional requests by Defendants for a

modification of the asset freeze to enable Defendants Daniels or

Fleming to pay their necessary and reasonable living expenses during

the pendency of this preliminary injunction. In the event that a

consensus cannot be reached, a motion should be filed with the Court

containing evidence to support the movant's position. This shall

include, with respect to Defendants Daniels or Fleming, a complete

financial statement showing the assets currently available to pay such

necessary and reasonable expenses and copies of the bills or

statements showing obligations that are required to be paid. In the

event Defendants seek to retain counsel to represent them in this case,

Plaintiff shall cooperate with Defendants to modify the asset freeze to

enable such counsel to be retained, provided that Plaintiff is able to

verify the identity of the counsel sought to be retained.

## IV.   RETENTION OF ASSETS AND RECORDS BY FINANCIAL INSTITUTIONS AND OTHER THIRD PARTIES

**IT IS FURTHER ORDERED** that any financial or brokerage institution or

26

depository, escrow agent, title company, commodity trading company, trust, entity, or person that holds, controls, or maintains custody of any account, document, electronically stored information, or asset owned or controlled, directly or indirectly, by any Defendant, or has held, controlled, or maintained any account or asset of, or on behalf of, any Defendant, upon service with a copy of this Order, shall:

A. Except as provided in Section III.B of this Order, hold and retain within its control and prohibit Defendants from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling, gifting, or otherwise disposing of any accounts, documents, electronically stored information, assets, funds, or other property that are owned by, held in the name of, for the benefit of, or otherwise controlled by, directly or indirectly, any Defendant, in whole or in part, except as directed by further order of the Court;

B. Provide the Plaintiff and Plaintiff's agents immediate access to electronically stored information stored, hosted, or otherwise maintained on behalf of any Defendant for forensic imaging;

C. Deny Defendants access to any safe deposit box titled in the name of any Defendant, individually or jointly, or subject to access by any Defendant, whether directly or indirectly.

D. Provide counsel for Plaintiff, to the extent not already provided, within five (5) business days after being served with a copy of this Order, a certified statement setting forth:

    1. The identification number of each such account or asset:

        a. titled in the name, individually or jointly, of any Defendant;

        b. held on behalf of, or for the benefit of, any Defendant;

        c. owned or controlled by any Defendants; or

        d. otherwise subject to access by any Defendant, directly or indirectly;

    2. The balance of each such account, or a description of the nature and value of such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of

the person or entity to whom such account or other asset was remitted;

3. The identification of any safe deposit box that is either titled in the name of any Defendant, or is otherwise subject to access by any Defendant; and

4. If an account, safe deposit box, or other asset has been closed or removed, the date closed or removed, the balance on such date, and the manner in which such account or asset was closed or removed.

E. Provide counsel for Plaintiff, within five (5) business days after being served with a request, copies of all documents pertaining to such account or asset, including but not limited to originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs (provided that such institution or custodian may charge a reasonable fee).

## V. FINANCIAL STATEMENT AND ACCOUNTING

**IT IS FURTHER ORDERED** that, to the extent not already provided, each Defendant, within five (5) business days of service of this Order, shall prepare and deliver to counsel for Plaintiff:

A.  For the Individual Defendants, a completed financial statement accurate as of the date of service of this Order upon such Defendant (unless otherwise agreed upon with FTC counsel) on the form of **Attachment A** to the TRO [Doc. 8], captioned, "Form Re: Financial Statement for Individual Defendant."

B.  For the Corporate Defendant, a completed financial statement accurate as of the date of service of this Order upon such Defendant (unless otherwise agreed upon with FTC counsel) in the form of **Attachment B** to the TRO [Doc. 8], captioned, "Form Re: Financial Statement for Business Entity Defendant."

C.  For each Defendant, a completed statement, verified under oath, of all payments, transfers or assignments of funds, assets, or property worth $2,500 or more since January 1, 2012. Such statement shall include: (a) the amount transferred or assigned; (b) the name of each transferee or assignee; (c) the date of the transfer or assignment; and (d) the type

and amount of consideration paid the Defendant. Each statement shall specify the name and address of each financial institution and brokerage firm at which the Defendant has accounts or safe deposit boxes. Said statements shall include assets held in foreign as well as domestic accounts.

## VI.   CONSUMER CREDIT REPORTS

**IT IS FURTHER ORDERED** that Plaintiff may obtain credit reports concerning any Defendant pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(l), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to Plaintiff.

## VII.   REPATRIATION OF FOREIGN ASSETS

**IT IS FURTHER ORDERED** that within five (5) business days following service of this Order, each Defendant shall:

A.   Provide counsel for Plaintiff with a full accounting of all assets, accounts, funds, and documents outside of the territory of the United States that are held either: (1) by them; (2) for their benefit; (3) in trust by or for them, individually or jointly; or (4) under their direct or indirect control, individually or jointly;

B.   Transfer to the territory of the United States all assets, accounts, funds, and documents in foreign countries held either: (1) by them; (2) for their benefit; (3) in trust by or for them, individually or jointly; or (4) under their direct or indirect control, individually or jointly;

C.   Hold and retain all repatriated assets, accounts, funds, and documents, and prevent any transfer, disposition, or dissipation whatsoever of any such assets, accounts, funds, or documents; and

D.   Provide Plaintiff access to all records of accounts or assets of Defendants held by financial institutions located outside the territorial United States by signing the Consent to Release of Financial Records attached to the TRO [Doc. 8], as **Attachment C.**

## VIII. <u>NON-INTERFERENCE WITH REPATRIATION</u>

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby enjoined from taking any action which may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by Section VII of this Order, including but not limited to:

A.    Sending any statement, letter, fax, e-mail or wire transmission,

telephoning or engaging in any other act, directly or indirectly, that

results in a determination by a foreign trustee or other entity that a

"duress" event has occurred under the terms of a foreign trust

agreement, until such time that all assets have been fully repatriated

pursuant to Section VII of this Order; and

B.    Notifying any trustee, protector or other agent of any foreign trust or

other related entities of either the existence of this Order, or of the fact

that repatriation is required pursuant to a Court Order, until such time

that all assets have been fully repatriated pursuant to Section VII.

## IX.    ORDER TO THIRD PARTIES TO DISABLE WEBSITES

**IT IS FURTHER ORDERED** that upon receiving actual notice of this

Order by personal service of otherwise, any person or entity, including any website

host, video-sharing platform, blog-publishing service, or social media host, hosting

any website by or for the Corporate Defendant, including under the names

APrimaryGroup.com and PrimarySolutionsAssociates.com, as well as any website

that is substantially identical in appearance to either of those websites, shall:

A. Immediately take any steps necessary to ensure that any website described above is disabled and no longer viewable or accessible to persons using the Internet;

B. Preserve all documents related to any website described above; and

C. To the extent not already done, immediately notify counsel for the FTC of any other website, blog, video-sharing, or social media marketing or promotion that is operated or controlled by or on behalf of any Defendant.

## X. PROHIBITION ON RELEASE OF CONSUMER INFORMATION

**IT IS FURTHER ORDERED** that, except as required by a law enforcement agency, law, regulation or court order, Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are restrained and enjoined from disclosing, using, or benefitting from consumer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a consumer's account (including a credit card, bank account, or other financial account), of any person which any Defendant obtained before entry of this Order in connection with any debt collection service.

## XI. **STAY OF ACTIONS**

**IT IS FURTHER ORDERED** that

A.  Except by leave of this Court, Defendants and all other persons and entities be and hereby are stayed from taking any action to establish or enforce any claim, right, or interest for, against, on behalf of, in, or in the name of, Corporate Defendant, or any of its subsidiaries, affiliates, partnerships, assets, documents, including, but not limited to, the following actions:

1.  Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;

2.  Accelerating the due date of any obligation or claimed obligation; filing or enforcing any lien; taking or attempting to take possession, custody, or control of any asset; attempting to foreclose, forfeit, alter, or terminate any interest in any asset, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise; or

3. Executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not.

B. This Section does not stay:

1. The commencement or continuation of a criminal action or proceeding;

2. The commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

3. The enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or

4. The issuance to Corporate Defendant of a notice of tax deficiency.

## XII. <u>PRESERVATION OF RECORDS AND TANGIBLE THINGS</u>

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or

participation with any of them, who receive actual notice of this Order, whether

acting directly or indirectly, are hereby enjoined from destroying, erasing,

mutilating, concealing, altering, transferring, or otherwise disposing of, in any

manner, any documents or records that relate to the business practices, or

business and personal finances, of Defendants, or any entity directly or indirectly

under the control of Defendants.

## XIII. SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that copies of this Order may be served by

facsimile transmission, personal or overnight delivery, or U.S. Express Mail, by

agents and employees of Plaintiff or any state or federal law enforcement agency

or by private process server, on Defendants or any other persons or entities that

may be subject to any provision of this Order.

## XIV. DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that within three (3) calendar days after

service of this Order, Defendants shall provide a copy of this Order to each of their

agents, employees, directors, officers, subsidiaries, affiliates, attorneys,

independent contractors, representatives, franchisees, and all persons in active

concert or participation with Defendants. Within five (5) calendar days following

service of this Order, Defendants shall provide Plaintiff with an affidavit

identifying the names, titles, addresses, and telephone numbers of the persons that Defendants have served with a copy of this Order in compliance with this provision.

## XV. **CORRESPONDENCE WITH PLAINTIFF**

**IT IS FURTHER ORDERED** that, for the purposes of this Order, because mail addressed to the FTC is subject to delay due to heightened security screening. all correspondence and service of pleadings shall be sent either via electronic transmission or via Federal Express to: Michelle Grajales, Federal Trade Commission, 600 Pennsylvania Avenue, NW, Room CC-10232, Washington, DC 20580. Email: mgrajales@ftc.gov; Telephone: (202) 326-3172; Facsimile: (202) 326-3768.

## XVI. **EXPIRATION OF PRELIMINARY INJUNCTION**

**IT IS FURTHER ORDERED** that the Preliminary Injunction shall expire ninety (90) days from the date of its entry, and shall be extended only upon a subsequent Order of the Court entered on consent of the parties or upon good cause shown.

## XVII. **JURISDICTION**

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.

**IT IS SO ORDERED** this 8th day of June, 2015, at $10:05$ A.M.


_____
MARK H. COHEN
United States District Judge